UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DUSTIN R.[1],

                                    Plaintiff,      19-CV-1050-FPG

v.                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

**INTRODUCTION**

On November 30, 2015, Plaintiff filed an application for supplemental security income ("SSI") benefits alleging disability beginning on December 31, 2014. Tr.[2] at 169-74. After the application was initially denied, Plaintiff timely requested a hearing. Tr. 97. On February 9, 2018, he appeared with his attorney, Jeanne Murray, Esq., and testified before Administrative Law Judge Bryce Baird ("the ALJ"). Tr. 39-76. A Vocational Expert ("VE"), Jay Steinbrenner, also testified at the hearing. Tr. 67-74. The ALJ issued an unfavorable decision on August 22, 2018. Tr. 20-32. Plaintiff then requested review by the Appeals Council, which the Council denied on June 10, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Subsequently, Plaintiff brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied his application for SSI.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 9, 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by his first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I.   District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II.   Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments,

2

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.20(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of November 30, 2015. Tr. 22. At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: depressive disorder,

anxiety disorder, and asthma. *Id.* He also found that Plaintiff's short-limbed dwarfism and diminished depth perception were non-severe impairments. Tr. 23-24. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 23-24. The ALJ proceeded to determine that Plaintiff retained the RFC to perform a full range of medium work, except that he could lift and carry 50 pounds occasionally and 25 pounds frequently, sit for up to six house in an eight-hour day, and stand or walk for up to six hours in an eight-hour day. Tr. 25. The ALJ also determined that Plaintiff could perform simple, routine tasks that can be learned after a short demonstration or within 30 days, but could not engage in production rate or pace work, or perform a job requiring teamwork, driving a vehicle, or travel to unfamiliar places. *Id.* The ALJ also limited Plaintiff to working in an environment with no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gasses, and poor ventilation. *Id.* Lastly, the ALJ opined that Plaintiff could have no more than superficial interaction with the public and no more than occasional interaction with co-workers, and that he must engage in work that requires doing the same tasks every day with little variation in location, hours, or tasks. Tr. 25-26.

At Step Four of the sequential analysis, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 31. The ALJ then proceeded to Step Five, where he determined that there were jobs in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 32. Specifically, the ALJ found that Plaintiff could work as a packaging machine operator, laundry worker II, and warehouse worker. *Id.*

## II. Analysis

Plaintiff advances two arguments in support of his motion. ECF No. 9. First, he argues that the ALJ made in error in Step Two of the analysis by failing to find his post-traumatic stress

disorder ("PTSD") and cluster B traits[4] to be severe impairments. *Id.* at 9-13. Plaintiff also argues that the ALJ failed to properly account for all mental limitations[5] identified by a consultative examiner, whose opinion the ALJ afforded significant weight. *Id.* at 13-18. The Court disagrees with Plaintiff for the following reasons.

As a general matter, in Step Two of the analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits claimant's physical or mental ability to perform basic work activities. *See* 20 C.R.F. §§ 416.909, 416.920(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

Although Plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by

---

[4] Cluster B traits, also known as "Cluster B Personality Disorders" "are characterized by dramatic, overly emotional[,] or unpredictable thinking or behavior. They include antisocial personality disorder, borderline personality disorder, histrionic personality disorder, and narcissistic personality disorder." MAYO CLINIC, PERSONALITY DISORDERS, https://www.mayoclinic.org/diseases-conditions/personality-disorders/symptoms-causes/syc-20354463 (last visited on Dec. 4, 2020).

[5] Because Plaintiff does not raise concerns about the ALJ's determination of her physical RFC, the Court is limited to resolving Plaintiff's arguments related to her mental functioning.

5

itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 266 (N.D.N.Y. 2012) (internal citation omitted). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled is made at [Step Two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes "an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities[.]" *Id.* at *4. "The omission of an impairment at [S]tep [T]wo may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination. *Woodmancy v. Colvin*, No. 5:12-CV-991 (GLS), 2013 WL 5567553, at *2 (N.D.N.Y. Oct. 9, 2013), *aff'd*, 577 F. App'x 72 (2d Cir. 2014) (internal citation omitted).

Plaintiff argues that the ALJ should have considered his PTSD and cluster B traits to be severe impairments at Step Two of the analysis because he was diagnosed with both impairments by Dr. Ghosh, his treating mental health provider. ECF No. 9 at 11-12. Even though Plaintiff correctly notes that the ALJ did not make specific references to his PTSD or cluster B traits in his opinion, Plaintiff's argument is, nonetheless, without merit because the limited medical evidence relating to his PTSD and cluster B traits does not support Plaintiff's position that either impairment significantly limited his ability to do basic work. *See* 20 C.F.R. § 416.920; *see also Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014).

It is undisputed that the diagnosis of PTSD appears in the opinion of Dr. Ghosh, which Plaintiff primarily relies on to advance his argument, the opinion of the consultative examiner Dr. Santarpia, and records of several mental health professionals who treated Plaintiff during the

6

pendency of his appeal. Tr. 319, 324, 328, 341, 344, 362. The evidence in the record establishes that Plaintiff was diagnosed with having PTSD as a result of a number of traumatic events that occurred in his childhood and adulthood. *Id.* However, the mere "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995). The record here does not support the proposition that Plaintiff's PTSD had more than a minimal impact on his ability to work. In fact, during treatment, it was Plaintiff's major depressive disorder that was always identified as his primary diagnosis, Tr. 314, 317, 320, 322, 325, 328, 344, 351, 362, while PTSD was either listed as a sub-category of anxiety disorders ("anxiety disorders: [PTSD]"), or not identified at all. Tr. 349, 351-52. Plaintiff himself testified that his depression and anxiety, not PTSD, were the reasons that prevented him from working. Tr. 47-48. His last employment ended because of a conflict with another employee. Tr. 56. He also testified that once or twice a month he had flashbacks triggered by a memory that would escalate his anxiety, and that he smoked marijuana to get relief from anxiety and depression symptoms. Tr. 56-57, 59-60, 313.

The Court recognizes that PTSD is a type of anxiety disorder that was evaluated under Listing 12.06, "Anxiety-Related Disorders" until January 17, 2017, when the Commissioner's rules related to evaluation of mental disorders were changed, and a separate Listing – Listing 12.15, "Trauma-and Stressor-Related Disorders," – was created for diagnosis of PTSD. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732, at *61159 (Sept. 26, 2016). *Id.* Even though the ALJ did not discuss Listing 12.15 in his decision, Plaintiff does not focus his argument on the ALJ's failure to consider PTSD under Listing 12.15, and instead, argues about the ALJ's alleged failure to address the severity of his PTSD at Step Two. Because Plaintiff's argument does not argue the application of Listing 12.15, the Court will not

7

discuss the standard for this Listing. It notes, however, that any error of the ALJ to consider Listing 12.05 in his decision would be harmless even if argued by Plaintiff because "the Paragraph B criteria and Paragraph C criteria under both Listing 12.06 and Listing 12.15 are the same, and the ALJ's finding that Plaintiff's anxiety did not meet the Paragraph B and Paragraph C criteria under Listing 12.06 is not challenged here." *Navarro v. Saul*, No. 18-CV-6192 CJS, 2019 WL 2521191, at *4 (W.D.N.Y. June 19, 2019).

Plaintiff primarily relies on the opinion and treatment records of Dr. Ghosh to support his position that his PTSD and cluster B traits were severe impairments. It should be noted that Dr. Ghosh treated Plaintiff only on three occasions in September, October, and November 2017, during which he diagnosed Plaintiff with PTSD, as well as depressive disorder. Tr. 313-21. In his initial September 2017 treatment note, Dr. Ghosh described Plaintiff's PTSD symptoms such as intrusive thoughts, hypervigilance, increased startle response, and nightmares, and referenced his lack of comfort around people, lack of trust, extreme anxiety, suspiciousness, and obsessive behaviors. Tr. 319. However, his subsequent notes, while indicating that Plaintiff continued to exhibit depression and anxiety, demonstrated Plaintiff's otherwise normal examinations and did not discuss the previously-identified PTSD symptoms. Tr. 313-21. Instead, they demonstrated that Plaintiff felt calmer because he was compliant with his medication, had good sleep, appetite, and plans for the future, expressed a wish to be in a relationship and have a family, communicated with his grandmother and siblings, watched videos, read, wrote, and continued involvement in psychotherapy and counseling. *Id.*

As for the cluster B traits, which Plaintiff argues were "a large part of Plaintiff's symptomatology per Dr. Ghosh," aside from being mentioned in Dr. Ghosh's opinion, only one reference to it was made by Dr. Ghosh, who identified cluster B traits as Plaintiff's secondary

diagnosis. Tr. 314. Notably, none of the other mental health providers who have observed or treated Plaintiff diagnosed him with exhibiting cluster B traits, or made references to Plaintiff's dramatic, emotional, or erratic behaviors that cluster B disorders – antisocial, borderline, histrionic or narcissistic personality disorders – are characterized by. Tr. 328, 339, 343, 346-47, 349. In fact, several mental health providers identified substance abuse as Plaintiff's secondary diagnoses during their treatment. Tr. 345.

Therefore, the sparse nature of the medical evidence related to Plaintiff's PTSD and cluster B traits, as well as the evidence suggesting that Plaintiff mainly suffered from symptoms of anxiety and depression, as opposed to PTSD, that were discussed in great detail by the ALJ weigh heavily in support of the Commissioner's position. *See Orton v. Astrue*, No. 7:11-CV-630 (FJS/ATB), 2013 WL 3328025, at *9 (N.D.N.Y. July 2, 2013) (plaintiff's self-serving testimony regarding his flashbacks, without more concrete medical evidence, is unpersuasive to find that his PTSD is a severe impairment under the regulation). Any failure to include Plaintiff's PTSD diagnosis in his analysis is harmless here because the ALJ expressly considered the medical evidence in the record and the combined effect that Plaintiff's anxiety and depression had on his functioning when he formulated Plaintiff's RFC and determined his ability to perform work. *See Grega v. Berryhill*, No. 17-CV-6596P, 2019 WL 2610793, at *3 (W.D.N.Y. June 26, 2019), *aff'd sub nom.*, 816 F. App'x 580 (2d Cir. 2020) (collecting cases).

Plaintiff's second point of contention that the ALJ failed to incorporate all limitations identified by the consultative examiner, particularly limitations in sustaining an ordinary routine and regular attendance, and interacting with supervisors, is similarly unavailing.

Generally, the regulations provide that it is the ALJ who is tasked with making an RFC determination based on the review of the entire record. *See* 20 C.F.R. § 416.927 (d)(2) ("Although

we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , your [RFC] . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.") That is why, while reviewing the denial of application for benefits, the Court must keep "in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted). It has also been well-established that when analyzing the record as a whole, the ALJ does not have to rely on one opinion in particular, and may even formulate an RFC without the benefit of a medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013 ("the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision"); *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment without the benefit of a medical opinion). So long as the opinion evidence of a medical expert is consistent with the rest of the evidence, the ALJ is allowed to rely on it when assessing the claimant's RFC.

Here, the ALJ relied on the opinion of Dr. Santarpia when he formulated Plaintiff's RFC, and the Court does not find any error in him doing so because the opinion was consistent with the record. *See, e.g., Trepanier v. Comm'r of Soc Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (summary order) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence." (internal citation omitted)). Dr. Santarpia opined that Plaintiff was able to understand, remember, and apply simple, as well as complex, directions and instruction, but was moderately impaired in

his ability to use reason and judgment to make work-related decisions, interact with supervisors, co-workers, and the public, sustain concentration, ordinary routine, and regular attendance, and perform at a consistent pace. Tr. 361. She noted that Plaintiff's difficulties were caused by lack of motivation. *Id.* Relying primarily on Dr. Santarpia's opinion, as well as the rest of the record, the ALJ formulated Plaintiff's RFC taking into consideration his social limitations when she limited him to simple, routine tasks without production rate, pace work, teamwork, driving a vehicle, or travel to unfamiliar places, that would have little variation in location, hours, or tasks, no more than superficial interaction with the public, and no more than occasional interaction with coworkers. Tr. 26. *Reilly v. Colvin*, No. 1:13-CV-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) (internal citations omitted) ("[a] limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning.") .

Because it is "within the province of the ALJ to resolve" conflicting findings and determine the scope of Plaintiff's RFC, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), the Court does not find any error in the ALJ not restricting Plaintiff's interaction with supervisors even though Dr. Santarpia opined that Plaintiff was moderately impaired in that domain. It is "not require[d] that [the] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Since the RFC determination does not have to mirror any of the medical opinions contained in the record, it was appropriate for the ALJ to make that judgment call based on his review of the entire record, which demonstrated Plaintiff's ability to interact with people of authority and those he did not know. In fact, Plaintiff's interactions with Dr. Santarpia and other mental health providers was

adequate, polite, cooperative, and humorous/ironic at times, with appropriate eye contact, and coherent speech. During therapy, Plaintiff indicated that he often talked to his grandmother and siblings, and used social media daily to communicate with friends. As for Plaintiff's ability to sustain an ordinary routine and regular attendance, which he argues was also not accounted for by the ALJ, the evidence in the record showed that Plaintiff was punctual for this psychotherapy appointments, appeared alert, organized, with intact attention, concentration, and goal-oriented thought process. Despite some evidence of noncompliance with medication, Plaintiff was, nonetheless, able to maintain a schedule of his prescribed psychotropic medications, the intake of which significantly improved his symptoms. Therefore, the ALJ's consideration of Plaintiff's treatment records, as well as his activities of daily living such as his watching every episode of Star Trek, reading books, writing his own stories, and playing instruments and videogames were property considered by the ALJ when he formulated Plaintiff's RFC. *Stanton v. Astrue,* 370 F. App'x 231, 234 (2d Cir.2010) (finding "no reason to second-guess the [ALJ's adverse] credibility finding . . . where the ALJ identified specific record-based reasons for his ruling").

Additionally, the ALJ's RFC determination was supported by the testimony of the VE, who testified that Plaintiff would be able to perform unskilled work of a packaging machine operator, laundry worker, and warehouse workers. Tr. 69. It has been determined that "moderate limitations in social interaction and other areas of work-related functioning nonetheless permit the performance of unskilled work, such that a limitation to unskilled work is generally sufficient to accommodate those limitations." *Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019). Therefore, Plaintiff's moderate limitations in his ability to sustain an ordinary routine and adequately interact with supervisors would not preclude the demands of unskilled jobs identified by the ALJ. *Id.* ("[E]ven a moderate limitation in social

functioning would not preclude the demands of unskilled work, [and the] ALJ's RFC determination that [p]laintiff could frequently interact with others [i]s not inconsistent with [a physician's] opinion that [p]laintiff had ... 'moderate' limitations in this area.") (internal citations omitted).

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). Here, the ALJ discussed the medical opinion evidence of the record, set forth his reasoning for the weight assigned to each opinion, and discussed specific evidence in the record which supported his RFC determination. As such, the Court finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is GRANTED. The Commissioner's decision is hereby AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 9, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court